1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

11
12
13
14
15
16

NORTH COAST ENTERPRISES, a
Washington corporation,

                                    Plaintiff,

          v.

ST. PAUL FIRE & MARINE INSURANCE
COMPANY, a Minnesota corporation,

                                    Defendant.

No. C05-653L

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING THE SUIT
LIMITATION CLAUSE

17
18

## I.  Introduction

19      This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment

20  Re: Scope of Coverage" (Dkt. # 14).  St. Paul Fire & Insurance Company ("St. Paul") issued a

21  first-party, builder's risk insurance policy covering the Library Square and Hawthorne

22  Apartment projects.  North Coast Enterprises ("North Coast") served as general contractor for

23  both of these projects and was the loss payee for the policy.  North Coast now moves for

24  summary judgment on St. Paul's affirmative defense that North Coast's suit is barred by the

25
26  ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING THE SUIT LIMITATION
CLAUSE

1    policy's two-year suit limitation clause.  Answer at 4, ¶ 7 (affirmative defenses).

2                                    **II.  Background**

3           St. Paul's builder's risk policy covered loss at the Library Square and Hawthorne

4    Apartment projects from December 29, 2000 to December 29, 2002.  The parties dispute the

5    precise date, but at some point between late August, 2002 and early November, 2002, the

6    Library Square building suffered water damage that was caused, in part, by inadequate flashing

7    between the deck units and the building's exterior.  The source of the water was either a flood

8    test or an unusually inclement storm.

9           North Coast submitted a claim for loss to St. Paul on December 2, 2003.  St. Paul first

10   responded to this claim on January 12, 2004.  In this response, St. Paul indicated that it had not

11   yet made a determination on the outcome of the claim, and requested more information from

12   North Coast.  North Coast responded on January 26, 2004, including with its letter the

13   supporting documentation that St. Paul had requested.

14          St. Paul next contacted North Coast on April 2, 2004, again requesting more information.

15   That e-mail asked for unexcerpted versions of certain construction reports, contracts, and other

16   documents.  North Coast provided some of this documentation shortly thereafter.  On April 7,

17   2004, representatives for the parties met to discuss the matter.  That meeting was followed the

18   next day by a letter from St. Paul to North Coast, explaining that St. Paul needed further

19   information to understand the claim.  North Coast responded with the requested information on

20   April 22, 2004.

21          The next communication in the record is a letter from North Coast, which was apparently

22   in response to a request from a telephone conversation for more information from St. Paul's

23   representative.  Included with that letter was "supporting documentation for the amount claimed

24   on the Library Square Project, both hard and soft costs," as well as North Coast's "Sworn Proof

25

26   ORDER ON MOTION FOR PARTIAL
     SUMMARY JUDGMENT
     REGARDING THE SUIT LIMITATION
     CLAUSE                                    -2-

of Loss." Harper Decl. Ex. I. This letter is dated May 26, 2004. On June 10, 2004, St. Paul responded to acknowledge receipt of the information and also said: "Please be advised that we will need more time to assess these claims." Harper Decl. Ex. J.

Representatives from North Coast and St. Paul later exchanged informal contacts. On July 2, 2004, Joseph Hampton, counsel for St. Paul, sent an e-mail to acknowledge receipt of a voicemail from Greg Harper, counsel for North Coast, and indicated that review of the claim was ongoing. Harper Decl. Ex. K ("We are still reviewing the updated claim and dox [sic] you sent, and are in the process of formulating a response."). Hampton followed up with a formal letter communicating the same message on July 6, 2004. On August 5, 2004, a St. Paul representative sent a substantially similar message to North Coast: "Please be advised that we have nearly completed evaluating your client's claims . . . . St. Paul's coverage position on these matters should be forthcoming shortly." Harper Decl. Ex. M.

Hampton sent another letter to Harper on August 25, 2005. This letter stated that St. Paul would "need more information to complete the coverage assessment." Harper Decl. Ex. N. This letter, sent almost nine months after North Coast's initial claim, was by far the most specific. It requested significant amounts of information and documentation on the claims, and the construction and repair processes. This letter also requested that North Coast identify the individuals involved with the building repairs, and requested that a representative of North Coast appear at the offices of St. Paul's legal counsel to provide testimony under oath. The examination occurred on September 28, 2004. On October 21, 2004, St. Paul wrote to indicate that it had just received the transcripts and "will, therefore, need an additional 30 days to complete our assessment of North Coast's claims." Harper Decl. Ex. O.

On November 12, 2004, almost a year after the initial claim was filed, North Coast sent a "settlement demand." Response at 9. St. Paul responded by saying that it would forward the

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING THE SUIT LIMITATION
CLAUSE                                    -3-

request to its client and indicated that it would be able to provide a response "within the next thirty days."  Harper Decl. Ex. P.

Finally, on December 31, 2004, St. Paul wrote to decline coverage for North Coast's claim.  Harper Decl. Ex. Q.  The first section of the report identified the loss suffered at the Library Square project as having been caused by failures in "planning, design, materials or maintenance," which were excluded under the policy.  Harper Decl. Ex. A, p. 10.  The second section concluded that there had been no "direct physical loss or damage" to the Hawthorne project.  Harper Decl. Ex. Q, p. 22.  The third and final substantive section observed that "North Coast submitted its settlement demand proposal, but has not filed a lawsuit against St. Paul to recover on its Library Square property claim.  Pursuant to the suit limitation clause, even if November 11, 2002 was the 'date on which the direct physical loss or damage occurred,' North Coast would now be barred from bringing a law suit on its Library Square claim against St. Paul."  Harper Decl. Ex. Q, p. 23.

North Coast filed suit on April 5, 2005.  In its answer, St. Paul asserted an affirmative defense that North Coast's suit is barred by the suit limitation clause in the policy.  North Coast has moved for summary judgment on the defense based on equitable tolling of the limitation period.

### III.  Summary Judgment Standard

As the summary judgment movant, North Coast must show that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  According to this rule, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine*

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING THE SUIT LIMITATION
CLAUSE                                          -4-

1   issue of *material* fact." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986).  An

2   issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a

3   fact is material if it "might affect the outcome of the suit under the governing law." <u>Id</u>. at 248.

4          If North Coast satisfies this burden, St. Paul "may not rest upon mere allegations or

5   denials of [North Coast's] pleading, but . . . must set forth specific facts showing that there is a

6   genuine issue for trial." Fed. R. Civ. P. 56(e).  "When the moving party has carried its burden

7   under Rule 56(c), its opponent must do more than simply show that there is some metaphysical

8   doubt as to the material facts." <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475

9   U.S. 574, 586–87 (1986).  This requires St. Paul "to go beyond the pleadings" to show the

10  existence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324

11  (1986).

12         North Coast argues in its motion that the policy's suit limitation period should be

13  equitably tolled.  To succeed in this motion, North Coast must show that there exist no genuine

14  issues of material fact as to the elements of equitable tolling.  The parties agree that Washington

15  law governs this action.

## IV.  Discussion

16

17  **A.     The Suit Limitation Clause**

18         St. Paul's builder's risk policy includes a suit limitation clause in its general rules.

19  Harper Decl. Ex. A at 8.  The clause reads as follows:  "**If your policy includes property**

20  **insurance.**  Any lawsuit to recover on a property claim must begin within 2 years after the date

21  on which the direct physical loss or damage occurred."  In the instant suit, St. Paul claims that

22  North Coast has made its loss date "a moving target."  Response at 3.  Notwithstanding this

23  assertion, it is clear that more than two years elapsed between the date that North Coast filed this

24  suit (April 5, 2005) and the last day of the St. Paul policy (December 29, 2002).  Thus, using

25

26  ORDER ON MOTION FOR PARTIAL
    SUMMARY JUDGMENT
    REGARDING THE SUIT LIMITATION
    CLAUSE                                          -5-

1    *any* loss date, North Coast must overcome the suit limitation clause.

2    **B.    Washington Equitable Estoppel Law**

3    　　North Coast does not dispute that contractual suit limitation periods in insurance policies

4    are valid and enforceable under Washington law.  See Rev. Code Wash. § 48.18.200 ("No

5    insurance contract . . . shall contain any condition, stipulation, or agreement . . . limiting right of

6    action against the insurer . . . to a period of less than one year from the date of the loss."); see

7    also Johnson v. Phoenix Assurance Co., 70 Wn.2d 726, 728–29 (1967) (upholding policy

8    provision requiring suit "within twelve months next").  The Washington Supreme Court has

9    "uniformly held that a clause in such a contract fixing a limitation of the time in which suit is

10   sustainable is a valid one."  Hefner v. Great Am. Ins. Co., 126 Wash. 390, 391 (1923).

11   　　North Coast cites to California cases where courts have automatically tolled the suit

12   limitation period when the insured submits its claim.  See, e.g., Prudential-LMI Commercial Ins.

13   v. Superior Court, 51 Cal.3d 674 (1990) ("We also hold that this limitation period should be

14   equitably tolled from the time the insured files a timely notice, pursuant to policy notice

15   provisions, to the time the insurer formally denies the claim in writing.").  Contrary to the rule in

16   California, however, such equitable tolling is not automatic in Washington.  See RCW

17   48.18.470 ("None of the following acts by or on behalf of an insurer shall be deemed to

18   constitute a waiver of any provision of a policy or of any defense of the insurer thereunder: . . .

19   Investigating any loss or claim under any policy or engaging in negotiations looking toward a

20   possible settlement of any such loss or claim.").  This statute protects insurers from the argument

21   that a policy's suit limitation clause is automatically tolled during an insurer's investigation of a

22   claim.  Elliott Court Assocs. v. Affiliated FM Ins. Co., No. 99-0974 (W.D. Wash. December 14,

23   1999) (Lasnik, J.) (order denying insurer's motion for partial summary judgment) ("[T]he Court

24   is precluded from equating defendant's investigation, or promises thereof, with the voluntary

25

26   ORDER ON MOTION FOR PARTIAL
     SUMMARY JUDGMENT
     REGARDING THE SUIT LIMITATION
     CLAUSE                                          -6-

1  relinquishment, or waiver, of the policy's suit limitation provision."). Washington courts have

2  implicitly rejected automatic tolling. See Johnson v. Phoenix Assurance Co., 70 Wn.2d 726

3  (1967) (not allowing claim when claimant sued just 21 days after the limitation period ended,

4  and the investigation of the claim had taken more than 21 days).

5        Washington courts, however, have recognized tolling based on equitable estoppel.

6  Dickson v. United States Fidelity & Guaranty, 77 Wn.2d 785, 788 (1970) ("The doctrine of

7  equitable estoppel rests on the principle that where a person, by his acts or representations,

8  causes another to change his position or to refrain from performing a necessary act to such

9  person's detriment or prejudice, the person who performs such acts or makes such

10  representations is precluded from asserting the conduct or forbearance of the other party to his

11  own advantage."). The doctrine of equitable estoppel applies in the insurance context if there is

12  "(1) [a]n admission, statement, or act inconsistent with the claim afterwards asserted; (2) action

13  by the other party on the faith of such admission, statement, or act; and (3) injury to such other

14  party from allowing the first party to contradict or repudiate such admission, statement, or act."

15  Logan v. North-West Ins. Co., 45 Wn. App. 95, 100 (Wash. Ct. App. 1986).

16  **C.  Communications Between North Coast and St. Paul**

17        North Coast fails to show that there is no genuine issue of fact as to the three material

18  elements of an equitable estoppel claim. In its communications, St. Paul never told North Coast

19  that coverage had been approved. In fact, St. Paul's communications simply complied with state

20  insurance regulations in the Washington Administrative Code ("WAC") regarding claims

21  handling. WAC 284-30-380(3) ("If the insurer needs more time to determine whether a first

22  party claim should be accepted or denied, it shall so notify the first party claimant within fifteen

23  working days after receipt of the proofs of loss giving reasons more time is needed."). While

24  there is language in these letters to suggest that St. Paul sought to encourage North Coast to

25

26  ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING THE SUIT LIMITATION
CLAUSE                                    -7-

1    continue to engage in the claims process (and not file suit), the intent of the communications can

2    genuinely be disputed.  Summary judgment is inappropriate based on this issue alone.

3    North Coast also fails to show that there is no genuine issue of fact as to whether it

4    justifiably relied on St. Paul's alleged efforts to keep the claims out of the courts until after the

5    suit limitation period expired.  St. Paul disputes the adequacy of North Coast's naked assertion

6    that it would have filed suit but for St. Paul's assertions that it required more time to assess the

7    claim.  Response at 14–16.  St. Paul argues that North Coast should be able to produce some

8    evidence of its forbearance from suit in reliance on the communications, and suggests that

9    counsel for North Coast would have acted differently with regard to the negotiations if North

10    Coast had been aware of the suit limitation clause.  Id.  The Court is persuaded that a genuine

11    issue of fact exists here.

12    Finally, North Coast's motion fails because it cannot prove injury.  The injury necessary

13    to satisfy this element will be the value of the claim if North Coast succeeds in this action.  If St.

14    Paul asserts the suit limitation defense after North Coast is able to prove St. Paul's liability

15    under the contract, then North Coast will only have to show the first two elements of equitable

16    estoppel.  It is premature at this stage, however, to strike the suit limitation period as an

17    affirmative defense.

18    North Coast finds helpful reasoning from several cases in which the trial court denied

19    summary judgment to the insurer based on equitable tolling.  See, e.g., Rouse v. Glascam

20    Builders, 101 Wn.2d 127 (1984); Dickman v. Country Mut. Ins. Co., 120 Ill. App. 3d 470 (Ill.

21    App. Ct. 1983).  These cases do not support the proposition, as North Coast suggests, that

22    insurers must be equitably estopped from asserting a suit limitation defense if the insured

23    submits its claim prior to the end of the suit limitation period.  Rather, they simply show that

24    "estoppel claims implicate factual issues which are not appropriate for resolution on a motion for

25

26    ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING THE SUIT LIMITATION
CLAUSE                                                                    -8-

1   summary judgment." <u>Time Oil Co. v. Cigna Property & Cas. Ins. Co.</u>, 743 F.Supp. 1400, 1419

2   (W.D. Wash. 1990).  The Court finds this generalization appropriate here.  The trier of fact must

3   assess whether St. Paul held inconsistent positions during the claims handling process and

4   whether North Coast acted in reliance on St. Paul's alleged misrepresentations.

5                                          **V.  Conclusion**

6          For the foregoing reasons, IT IS HEREBY ORDERED that North Coast's motion for

7   summary judgment on St. Paul's affirmative defense regarding the two-year suit limitation

8   clause (Dkt. # 15) is DENIED.

9

10         DATED this 16th day of February, 2006

11

12

13                                         _____
                                           Robert S. Lasnik
14                                         United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26   ORDER ON MOTION FOR PARTIAL
     SUMMARY JUDGMENT
     REGARDING THE SUIT LIMITATION
     CLAUSE                                            -9-