UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NORTH COAST ENTERPRISES, a Washington corporation,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br>ST. PAUL FIRE & MARINE INSURANCE COMPANY, a Minnesota corporation,<br><br>　　　　　　　　　　Defendant. | No. C05-653L<br><br>ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING SCOPE OF COVERAGE |

## I. Introduction

This matter comes before the Court on "Plaintiff's Motion for Partial Summary Judgment Re: Scope of Coverage" (Dkt. # 14). St. Paul Fire & Insurance Company ("St. Paul") issued a first-party, builder's risk insurance policy ("the policy") covering the Library Square and Hawthorne projects. North Coast Enterprises ("North Coast") served as general contractor for both of these projects and was a loss payee on the policy. In the instant summary judgment motion, North Coast seeks a ruling from the Court that the policy covers losses caused "by weather conditions and identifiable rain storms," and "weather-related property damage, even if that damage resulted from" faulty construction. Motion at 1–2.

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING SCOPE OF COVERAGE

## II.  Factual Background

North Coast was the general contractor for the Library Square project, a six-story, 57-unit condominium located in Bellevue, Washington.  St. Paul issued a "Contractor's and Owner's Property Protection Insurance Policy," for the construction of the building, which is commonly known as a "builder's risk policy."  The policy covered the project from December 29, 2000 to December 29, 2002.

According to North Coast, a violent rain storm slammed Bellevue from November 5, 2002 until November 10, 2002.  Each day, the recorded rainfall was above the November daily average.[1]  On November 6, the rainfall was five times the November daily average.  In addition, from November 6 to November 9, SeaTac Airport recorded wind gusts exceeding 20 miles per hour every day.

During this five-day stretch of especially inclement weather, the Library Square building was damaged by water that penetrated through unfinished openings and defectively constructed waterproofing components.  The water migrated through the building, causing significant damage to its interior.  North Coast conducted extensive investigations of the damage and submitted a claim to St. Paul just over a year later, on December 2, 2003.

St. Paul offers a different explanation for the water damage.  St. Paul asserts that the loss was caused by "a lack of 'flashing' around the deck perimeters, improper application of 'Liquid Boot' waterproofing material, and sloppy execution of work."  Response at 3.  St. Paul asserts further that the specific damage complained of was not even the result of rain penetrating the building through the defective construction.  According to St. Paul, the damage resulted from North Coast's subsequent investigations of the extent of the defects of the construction, during a process called "flood testing."

---

[1] No one can deny that an average November is a rainy month in Seattle.

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING SCOPE OF COVERAGE             -2-

A flood test involves blocking the deck drains and filling up the deck area with approximately seven inches of water. North Coast employees testified at their depositions that during this process, the deck areas leaked dramatically and "right into the building." Derrig Decl. Ex. Z at 29. St. Paul suggests that rain is not a likely culprit because North Coast installed a temporary tarp over the decks when they realized the leakage problem. Derrig Decl. Ex. X. Furthermore, one of the "loss dates" in North Coast's original claim, October 17, corresponds to a flood testing day. Response at 4 (citing Sarff Decl. at ¶ 3 and Derrig Decl. Exs. T, V).

After a year-long claim investigation process, St. Paul denied the claim in December, 2004. North Coast filed suit in April, 2005 and now moves for partial summary judgment on the issue of liability for loss caused by wind-driven rain.

### III. Summary Judgment Standard

As the summary judgment movant, North Coast must demonstrate that the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). According to this rule, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." Id. at 248.

If North Coast satisfies this burden, St. Paul "may not rest upon mere allegations or denials of [North Coast's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING SCOPE OF COVERAGE              -3-

U.S. 574, 586–87 (1986). This requires St. Paul "to go beyond the pleadings" to show the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

In this motion, North Coast argues that the evidence shows that violent rain storms damaged the Library Square building, and that this damage is covered under the St. Paul builder's risk policy. The parties agree that Washington law governs this action.

### IV. Discussion

**A.   Policy Interpretation**

The construction of insurance contracts is a question of law. McDonald v. State Farm Fire & Casualty Co., 119 Wn.2d 724, 730 (1992). When the parties agree to the relevant facts, "and coverage depends solely on the language of the insurance policy," the existence of coverage can be decided as a matter of law. Roller v. Stonewall Ins. Co., 115 Wn.2d 679, 682 (1990). Alternatively, liability can be determined on summary judgment if there exist no genuine issues of material facts based on the parties' pleadings.

The St. Paul builder's risk policy is an all-risk policy. Policy at 17.[2] In an all-risk insurance policy, "any peril that is not specifically excluded in the policy is an insured peril." Findlay v. United Pacific Ins. Co., 129 Wn.2d 368, 378 (1996). The structure of such a policy "consists of a grant of coverage counterbalanced by coverage exclusions." McDonald, 119 Wn.2d at 734. As a rule, exclusions in an all-risk policy must be strictly construed against the insurer, and thus in favor of coverage. Phil Schroeder, Inc. v. Royal Globe Ins. Co., 99 Wn.2d 65, 68 (1983). These provisions, however, also must be "interpreted in a way that gives effect to

---

[2] A copy of the policy is included in the Harper Declaration, at exhibit A. Because the internal page numbers start over several times within the policy, the Court will identify provisions in the policy using the page numbers from the Court's electronic filing system printed on those pages. This citation is to page number 17 of 31.

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING SCOPE OF COVERAGE          -4-

each provision of the insurance contract." Findlay, 129 Wn.2d at 378.

**B.     The Policy Provisions**

The policy excludes some loss caused by weather conditions. Policy at 11. The provision reads as follows:

> **Weather conditions.** We won't cover loss caused by weather conditions that results in:
>
> - landslide, mudslide, or mudflow;
> - mine subsidence; earth sinking, rising, or shifting (other than sinkhole collapse);
> - flood, surface water, waves, tides, tidal waves, or overflow of any body of water or their spray, all whether driven by wind or not;
> - water backing up from a sewer or drain;
> - water under the ground surface pressing on, or flowing or seeping through;
> - foundations, walls, floors, or paved surfaces;
> - basements whether paved or not; or
> - doors, windows, or other openings.
>
> But if loss or damage by a covered cause of loss results, we'll pay for that resulting loss or damage.

Id. According to the structure of this provision, the policy covers loss caused by weather conditions, unless one of the enumerated events is involved. If one of these events is not present, any loss caused by weather conditions is covered under the policy.[3]

The policy also excludes defective construction from coverage. Policy at 10. This provision reads:

> **Planning, design, materials, maintenance.** We won't cover loss caused by faulty, inadequate or defective:
>
> - planning, zoning, development, surveying, siting;
> - design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;
> - materials used in repair, construction, renovation or remodeling, or
> - maintenance.

---

[3] Although the parties have not briefed this point, this statement is limited by the fortuity doctrine, which operates to exclude from coverage all non-fortuitous events (e.g., sunshine drying out a coat of paint) under an all-risk policy. See Pub. Util. Dist. No. 1 v. Int'l Ins. Co., 124 Wn.2d 789, 805–06 (1994) (discussing known-risk principle).

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING SCOPE OF COVERAGE          -5-

>   All of the above apply to part or all of any property on or off the location described in the Coverage Summary.
>
>   But if a loss not otherwise excluded results, we'll pay for that resulting loss.

Id. The structure of this exclusion is straightforward. Any loss caused by a peril listed in this exclusion will not be covered under the policy.

Importantly, both the defective construction and weather conditions exclusions have "resulting loss" provisions that operate to limit the extent of the provision.[4] St. Paul's resulting loss provision is modeled on a classic "ensuing loss" provision, which is designed to provide "that if one of the specified uncovered events takes place, any ensuing loss which is otherwise covered by the policy will remain covered." McDonald, 119 Wn.2d at 734. These provisions explicitly limit the exclusions to the terms thereof. Thus, if defective construction results in a loss that is actually caused by a non-excluded peril, then the policy covers that loss. The impact of the exclusion will not be expanded to deny coverage for all resulting losses.

## C.   Efficient Proximate Cause

In Washington, in order to determine what "causes" a loss when the loss is properly attributed to two or more perils, courts apply the efficient proximate cause rule. Graham v. Public Employees Mut. Ins. Co., 98 Wn.2d 533, 538 (1983) ("It is the efficient or predominant cause which sets into motion the chain of events producing the loss which is regarded as the proximate cause, not necessarily the last act in a chain of events."). This rule will impose liability on an insurer for loss that is efficiently caused by a non-excluded peril, even if an

---

[4] These resulting loss provisions are worded slightly differently, but appear to have the same effect. The resulting loss provision in the weather conditions exclusion refers to "loss *or damage*," and the defective construction provision refers only to "loss." These are fairly understood to mean the same thing. Also, the weather conditions exclusion refers to loss or damage "by a covered cause of loss" and the defective construction exclusion refers to loss "not otherwise excluded." Because this is an all-risk policy, the Court interprets "covered" and "not otherwise excluded" to be equivalent.

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING SCOPE OF COVERAGE           -6-

excluded peril was in the sequence of precipitating events. Safeco Ins. Co. v. Hirschmann, 52 Wn.App. 469, 475 (1988). In the converse, if an excluded peril is determined to be the efficient proximate cause of the loss, the presence of a covered cause of loss in the causal sequence will not salvage coverage under the policy. Id. Washington courts have held that "[t]he identification of a certain event as the efficient proximate cause of a loss is usually a question of fact." Findlay, 129 Wn.2d at 373.

In its motion, North Coast walks a thin line between arguing for a finding that (1) the St. Paul policy covers loss caused by a certain kind of peril and (2) the loss in question actually was caused by that peril, and that therefore St. Paul is liable. See, e.g., Motion at 1 (claiming to seek a "ruling on a narrow issue of law"). It is unclear whether the desired ruling is on the policy's coverage of the events in question, or a hypothetical set of events. North Coast seems to suggest the latter in this sentence: "North Coast does not seek a ruling that St. Paul is liable for a specific quantum of damage and does not seek a determination of the proximate cause of the damage in dispute in this case . . . ." Id. at 2. However, North Coast goes on to spend the vast majority of its motion arguing that the facts support a finding of liability against St. Paul.

The structure of the policy's weather conditions exclusion clearly evinces an intent to cover loss caused by some weather conditions. In the relevant provision, the peril of weather conditions is excluded from coverage only to the extent that the weather conditions result in certain enumerated events. Policy at 11. Thus, the policy would cover loss caused by a severe storm that did not result in an excluded event. On the record thus far, however, it is unclear which peril was the efficient proximate cause of North Coast's loss: defective construction or weather conditions. If weather conditions are determined to be the efficient proximate cause, then more factual questions will remain as to whether the conditions were non-excluded and fortuitous. It is premature for the Court to make legal determinations regarding these hypothetical factual scenarios. The question of the efficient proximate cause of North Coast's

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING SCOPE OF COVERAGE         -7-

losses must be left to the trier of fact.

## V. Conclusion

For the foregoing reasons, North Coast's motion for summary judgment on the scope of coverage (Dkt. # 14) is DENIED.

DATED this 28th day of March, 2006

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER ON MOTION FOR PARTIAL
SUMMARY JUDGMENT
REGARDING SCOPE OF COVERAGE           -8-